# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **MARTIN BENITO MONTEMAYOR,** | ) |
| **Plaintiff,** | ) |
| v. | ) NO. 3:19-cv-01087 |
| | ) JUDGE TRAUGER |
| **F/N/U RUDD, et al.,** | ) |
| **Defendants** | ) |

## MEMORANDUM AND ORDER

Plaintiff Martin Benito Montemayor, a pretrial detainee in the Rutherford County Adult Detention Center in Murfreesboro, Tennessee (hereinafter "the Jail"), filed a pro se civil rights action under 42 U.S.C. § 1983. (Doc. No. 1.) On February 3, 2020, the court granted the plaintiff permission to proceed with his lawsuit *in forma pauperis* but determined that his complaint improperly joined claims and parties in a manner not permitted by the Federal Rules of Civil Procedure. (Doc. No. 8.) Accordingly, the court ordered the plaintiff to elect his cause of action and file an amended complaint within 28 days. (*Id.* at 5.) After obtaining an extension of time, the plaintiff filed his amended complaint on March 16, 2020 (Doc. No. 11), and it is before the court for initial screening.

### I.  STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915(e)(2), the court is required to conduct an initial review of any complaint filed in forma pauperis and to dismiss the complaint if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most

favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, "a court cannot create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. Jan. 31, 2011).

The plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

## II.   FACTUAL ALLEGATIONS

The plaintiff identifies the defendants to his amended complaint as Dr. John Daniel Rudd, who is contracted to provide medical care to the inmates in the Jail; registered nurse and director of health services, Ken Tucker; Sergeant Kenneth Zook, who is responsible for classification of detainees in the Jail; and Jail administrator Christopher Fly. (Doc. No. 11 at 5–8.) He alleges that he was booked into the Jail on March 31, 2019, as a suspect in his wife's murder and was described by a police officer with a code designating him as a suicide risk. (*Id.* at 10.) He was assessed by medical staff that day in a medical intake screening during which he acknowledged a history of

2

psychiatric treatment and a suicide attempt in 2010 and said he had nothing to live for. (*Id.* at 10–12.) But despite having earlier confided in a friend that he was distraught and was going to end his life in a "suicide by cop," he said during the intake screening that "he did not want to hurt himself or others." (*Id.* at 10, 12.) Sometime that day the plaintiff was moved from his single cell in the booking area to a cell with 13 other detainees, where he stayed until April 2, 2019, when he was moved into a suicide watch cell. (*Id.* at 12–13.) On April 3, the plaintiff was moved into administrative segregation on the fifth floor, which he says involves fewer privileges and is typically used for disciplinary purposes. (*Id.* at 13.) The plaintiff does not recall what happened next, but sometime later that day he was found hanging in his cell, unresponsive. (*Id.* at 14.) He was hospitalized until April 5, when he returned to suicide watch in the Jail. (*Id.*)

The plaintiff alleges that he was held in the restrictive, uncomfortable confines of suicide watch for more than five months, until September 13, 2019. (*Id.* at 15.) He says that the defendants' refusal to allow him to telephone his former landlord during that period resulted in the loss of all of his property. (*Id.*) The plaintiff was moved to general population on September 13 but continued to be subjected to more restrictions than other general population inmates, despite his better behavior record. (*Id.* at 18–19.) He was not allowed out for normal general population activity until February 23, 2020. (*Id.* at 20.) The plaintiff alleges that throughout this time he was denied the opportunity—afforded to other inmates—to receive beneficial mental health treatment at an outside facility. (*Id.* at 23.) He asserts that this disparate treatment was due to his being a member of a racial minority and alleges that only minorities have been held on suicide watch for longer than a week at a time, while other inmates come and go. (*Id.* at 14–19, 23.) The plaintiff alleges that all four of the named defendants participated in reviews of his classification every other week, in which he was never allowed to participate or present evidence on his behalf, and he

3

holds them responsible for his alleged disparate treatment.

The plaintiff alleges that he has suffered severe psychological injuries in addition to his loss of property, and he seeks injunctive and monetary relief totaling at least $40,000 from each defendant. (*Id.* at 26.)

### III. ANALYSIS

The plaintiff claims that his attempted suicide days after he was booked into the Jail was the result of deliberate indifference to his serious needs. Deliberate indifference to a prisoner's serious medical needs "constitutes the unnecessary and wanton infliction of pain" and violates a pretrial detainee's rights under the Fourteenth Amendment. *Ruiz v. Martin*, 72 F. App'x 271, 275 (6th Cir. 2003) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) ("Although the Eighth Amendment's protections apply specifically to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well."). "An inmate's 'psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies.'" *Grabow v. Cty. of Macomb*, 580 F. App'x 300, 307 (6th Cir. 2014) (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 570 (6th Cir. 2013).

A deliberate indifference claim also has a subjective component, which "entails something more than mere negligence," *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* This standard requires proof that the defendant knew that the inmate

4

faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harms exists, and he must also draw the inference." *Id.* at 834, 837.

Despite his denial of any suicidal urge during his medical intake screening, the plaintiff's earlier statements to his friend and his suicide attempt three days later suggest that he suffered from an objectively serious psychiatric need for some intervention during those days. But the plaintiff does not allege that Dr. Rudd himself, or any of the other defendants, were personally aware of that need. He does not allege that any of the defendants conducted his intake screening, knew about his suicidal comments to his friend, or had any other reason to know that he was suicidal. He alleges that Dr. Rudd and Tucker were responsible for supervision of medical screenings and care and that Rudd "knew or should have known" of his condition (Doc. No. 11 at 5–6), but that is not sufficient to state a claim for deliberate indifference. As explained above, deliberate indifference means that a defendant is subjectively aware of a serious need and disregards it. Moreover, a defendant's role as a supervisor does not make him individually liable for the alleged misdeeds of staff. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that liability under § 1983 "must be based on more than respondeat superior, or the right to control employees. Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'").

Nor do the plaintiff's allegations state official-capacity claims against the defendants in connection with his treatment prior to his suicide attempt. Regardless of whether the defendants are employed by the metropolitan government or a privately-owned company, in order to state a

claim against either of those entities, the plaintiff must allege that the violation of his rights arose from some official policy or custom of the entity. *Thomas v. Coble*, 55 F. App'x 748, 748–49 (6th Cir. 2003); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Although the plaintiff vaguely alludes to unspecified "customs" and "practices" (Doc. No. 11 at 5, 8), he does not identify or describe any such policies, practices, or customs or explain how they caused or enabled his suicide attempt.

And finally, the plaintiff's own allegations indicate that jail staff were not indifferent to his needs. He acknowledges that he was on suicide watch the day before his suicide attempt. Someone had thus clearly taken his condition seriously enough—despite the plaintiff's denial of suicidal thoughts—to put him under close observation for a period of time before moving him into another restricted setting. Even if the timing of the plaintiff's release from suicide watch was premature or otherwise negligent, such negligence is not sufficient to state a claim for cruel and unusual punishment. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Accordingly, the plaintiff fails to state a constitutional claim for deliberate indifference to his serious health needs.

The plaintiff also claims that the defendants subjected him to racial discrimination by holding him in unreasonably restrictive and uncomfortable settings from April 5 to February 23 and by denying him mental health treatment at an outside facility. He provides examples of inmates with similar or worse behavior than his who allegedly received better treatment because they are caucasian.

To state a claim for race-based discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, an inmate must allege sufficient facts to show "that a state actor intentionally discriminated against [him] because of membership in a protected class." *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008) (quoting *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)). Accordingly, a minority inmate's allegation that he was treated worse than similarly situated white inmates solely on the basis of his race states a claim for violation of his right to equal protection. *See LaFountain v. Harry*, 716 F.3d 944, 950 (6th Cir. 2013) (citing *Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004)). For the purposes of initial screening, the plaintiff's allegations are sufficient to satisfy this standard. Because he alleges that all four defendants were involved in the regular reviews of his classification and the resulting conditions of his confinement, this equal protection claim shall proceed against all of them.

The plaintiff also complains that he was denied due process by not being allowed to appear or give evidence at the regular classification reviews conducted by the defendants while he spent months in restricted confinement. As a pre-trial detainee rather than a convicted prisoner, Plaintiff has a Fourteenth Amendment right not to "be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *cf. Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that convicted inmates' due process rights are limited to the right to be free from conditions that either "exceed[ ] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force," or "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). Accordingly, the administrative segregation of a pre-trial detainee without due process is sufficient to state a claim that will survive initial screening. *Evans v. Bonner*, No. 18-2726-JDT-CGC, 2019 WL 5269103, at *5 (W.D. Tenn. Oct. 17, 2019) (holding that pre-trial detainee's continued

detention in administrative segregation in the absence of disciplinary charges is sufficient to state a claim). Construing the amended complaint liberally in his favor solely for the purpose of initial screening, the court finds the plaintiff has at least arguably stated a claim against the defendants for due process violations in connection with his prolonged segregation without hearing.

The plaintiff does not state a claim, however, with regard to the loss of his property at the hands of his landlord or whoever else took or disposed of it. The plaintiff has not identified any legal theory under which jail staff are constitutionally responsible for what becomes an inmate's personal property outside the facility, and "an inmate has no right to unlimited telephone use." *Anthony v. Bradley Cty. Justice Ctr.*, No. 1:12-CV-303, 2015 WL 1206620, at *6 (E.D. Tenn. Mar. 17, 2015) (quoting *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994)). This claim, therefore, will be dismissed.

## IV. FURTHER ACTION

For the reasons set forth above, this case will proceed against defendants Rudd, Tucker, Zook, and Fly solely on the plaintiff's claims of racial discrimination and due process violations. The plaintiff's deliberate indifference claim and his claim about his lost property are **DISMISSED** for failure to state a claim upon which relief can be granted. All other claims and defendants that were identified in the original complaint and effectively withdrawn by their omission from the amended complaint are **DISMISSED** without prejudice.

The Clerk is **INSTRUCTED** to send the plaintiff service packets (a blank summons and USM 285 form) for each defendant named above. The plaintiff **MUST** complete the service packets and return them to the Clerk's office within **21 days** of the date of this Order. Upon return of the completed service packets, **PROCESS SHALL ISSUE**.

This action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the

management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court. Despite the issuance of process, the Magistrate Judge may sua sponte recommend the dismissal of any claim for the reasons set forth in 28 U.S.C. § 1915(e)(2).

It is so **ORDERED**.

_____
ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE